The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK MAYES,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AMAZON.COM.DEDC LLC,<br><br>　　　　　Defendant. | No. 18-CV-00176-MJP<br><br>PLAINTIFF'S COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiff Mark Mayes ("Plaintiff" or "Mr. Mayes") alleges against Defendant Amazon.com.dedc LLC ("Amazon" or "Defendant"), as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1. This action arises from an employment relationship between Mr. Mayes and Defendant Amazon. Mr. Mayes alleges claims based on Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, 42 U.S.C. § 12112 et seq., and Washington state law.

2. Mr. Mayes is an individual residing in King County, Washington.

3. Defendant Amazon is a corporation organized and existing under the laws of Washington, with its headquarters and principal place of business located in Seattle,

PLAINTIFF'S COMPLAINT FOR DAMAGES- 1
Case No. 18-CV-00176-MJP

Washington. Amazon is therefore a citizen of Washington. Defendant Amazon is an electronic commerce company with a fulfillment warehouse in Kent, Washington. Amazon therefore conducts business in King County, Washington. Defendant is an "employer" subject to Washington state statutes governing employment discrimination including the Washington State Law Against Discrimination, Ch. 49.60 RCW ("the WLAD").

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are part of the same case or controversy as Mr. Mayes' federal law claims.

5. Venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to Mr. Mayes' claims occurred in the Western District of Washington.

## II.  FACTS

6. Mr. Mayes is an African American male. In or around May 2017, Amazon hired Mr. Mayes to work as a picker at its fulfillment center in Kent, Washington. When Mr. Mayes began his employment, he was inadequately trained. Because he was not properly trained, Mr. Mayes was forced to train himself while on the job.

7. Within Mr. Mayes' first week of employment, a member of the HR department wore a T-shirt with the phrase "gangster napper" on it which alluded to a derogatory slur and made Mr. Mayes uncomfortable. Mr. Mayes asked the HR employee why she wore such an offense shirt. The HR employee did not give Mr. Mayes an answer. Following that conversation, the HR employee would stare at Mr. Mayes and whisper to other employees whenever he walked by her.

8. After this encounter with the HR employee, Mr. Mayes was targeted by a floor manager named Andreus LNU who is Caucasian. Andreus wrote up Mr. Mayes for poor

PLAINTIFF'S COMPLAINT FOR DAMAGES- 2
Case No. 18-CV-00176-MJP

performance within the first week of Mr. Mayes' employment. Andreus used an aggressive demeanor when interacting with Mr. Mayes. And every time Mr. Mayes spoke with Andreus he told Mr. Mayes that he might get fired.

9. Mr. Mayes told Bradley LNU, a manager, that he thought Andreus was harassing him because of the color of Mr. Mayes' skin. After Mr. Mayes raised this concern, Bradley subjected Mr. Mayes to harassment and disciplinary write ups daily. Mr. Mayes was told the write ups were due to poor production performance, however, Mr. Mayes' performance was not poor. The production records did not accurately reflect Mr. Mayes' performance. His production performance was better than some of his co-workers who were Caucasian and he was disciplined more severely than employees who were not African American.  Mr. Mayes believed the reason for the writes ups was due to his race as an African American.

10. A co-worker told Mr. Mayes that he smelled like watermelon in front of another floor manager named Aaron LNU. After this comment, Aaron told Mr. Mayes "I'm bright" while pointing to his skin. Aaron is Caucasian.

11. Mr. Mayes continued to complain to management that the performance write ups he received were not justified under Amazon's policies. However, managers continued to make racial remarks and laughed and humiliated Mr. Mayes. They sarcastically told him to "hang in there". One manager, Skylar LNU, made this comment to Mr. Mayes while standing in front of a board that referred to managers as "owners". Skylar is Caucasian.

12. Mr. Mayes had a meeting with Emily Larson from the HR department. During that meeting, Ms. Larson told Mr. Mayes "we are gunning for you" while making a gun gestor with her hand. Mr. Mayes asked Ms. Larson to repeat what she said multiple times, and she

PLAINTIFF'S COMPLAINT FOR DAMAGES- 3
Case No. 18-CV-00176-MJP

repeated the same phrase. Mr. Mayes felt threatened and no longer felt Amazon was a safe environment.

13. In June 2017, Mr. Mayes injured his ankle while working. Amazon hold Mr. Mayes to get documentation from his doctor about the injury. Mr. Mayes went to the emergency room and was treated. His doctor diagnosed him with acute right ankle pain and advised Mr. Mayes that he must wear a medical walking boot at work until July 10, 2017. Mr. Mayes repeatedly asked management for reasonable accommodations for his chronic ankle pain, which he was denied.

14. Aaron Reynolds, another manager, spoke with Mr. Mayes several times regarding his work performance. Mr. Mayes spoke to Mr. Reynolds about the frivolous write-ups and asked that they be removed from his employee record. He also informed Mr. Reynolds that his ankle was swollen and he needed accommodations for it. Subsequently, Mr. Mayes went to Mr. Reynold's office again to bring up the same issues. Mr. Reynold removed some of the write-ups, but not all of them. Mr. Reynolds also had not made any accommodations for Mr. Mayes' ankle. After Mr. Mayes repeated his complaints during this meeting, Mr. Reynolds made the statement "I got fourteen bullets for you" to Mr. Mayes.

15. The comments by Ms. Larson and Mr. Reynolds made Mr. Mayes fear for his life. He reported the threats to the police. Mr. Mayes also sent emails to various managers at Amazon to report the hostile work environment.

16. Mr. Mayes also spoke with another manager about his concerns and fears regarding the actions and comments of his supervisors and managers. When Mr. Mayes turned to leave at the end of the conversation, the manager began laughing and made sarcastic weeping gestures with his hands, mocking Mr. Mayes.

PLAINTIFF'S COMPLAINT FOR DAMAGES- 4
Case No. 18-CV-00176-MJP

17. Mr. Mayes spoke to the top manager at the Kent fulfillment center about the harassment and discrimination he was experiencing. The manager said he would transfer Mr. Mayes to a different location and that Mr. Mayes did not need to be concerned about being fired. However, Mr. Mayes was not transferred and the discrimination and harassment continued. Mr. Mayes felt his life was in danger and no longer felt safe to go to the Kent fulfilment center where the threats originated from. Mr. Mayes informed Amazon that he did not feel safe going to work. Amazon told Mr. Mayes he would not get fired for not going to work until he was transferred. While waiting to be transferred to a different location, Amazon terminated Mr. Mayes' employment.

## CAUSES OF ACTION

18. Plaintiff realleges and incorporates paragraphs 1 through 17 above.

19. The above stated facts give rise to a claim against Defendant for disparate treatment/ discrimination on the basis of race, color, and national origin in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq.

20. The above stated facts give rise to a claim against Defendant for hostile work environment/ discrimination on the basis of race, color, and national origin in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq.

21. The above stated facts give rise to a claim against Defendant for retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et. seq.

22. The above stated facts give rise to a claim against Defendant for race, color, and national origin discrimination in violation of 42 U.S.C. § 1981.

23. The above stated facts give rise to a claim against Defendant for discrimination on the basis of disability in violation of 42 U.S.C. § 12112 et seq.

24. The above stated facts give rise to a claim against Defendant for race discrimination and wrongful termination in violation of the Washington State Law Against Discrimination, RCW chapter 49.60.

25. As a direct and proximate result of Defendant's actions, Plaintiff suffered lost back pay and benefits; lost front pay and future benefits; lost future earning capacity; mental and emotional distress, anger, sadness, anxiety, embarrassment, and other emotional distress associated with discrimination and retaliation, all in amounts to be determined at trial.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Mark Mayes prays for judgment as follows:

A. Damages for back pay, front pay, lost benefits, and lost future earning capacity in an amount to be determined at trial;

B. Damages for mental and emotional distress in an amount to be determined at trial;

C. Prejudgment interest in an amount to be determined at trial;

D. Compensation for any tax penalty associated with a recovery;

E. Punitive damages in the maximum amount permitted by law;

F. Attorney's fees and costs; and

G. Any further and additional relief the Court deems just and equitable.

PLAINTIFF'S COMPLAINT FOR DAMAGES- 6
Case No. 18-CV-00176-MJP

DATED: June 27, 2018

                                    Respectfully submitted,

                                    MICHELLE PETERSON LAW, PLLC

By *s/Michelle Peterson*
Michelle Peterson, WSBA No. 33598
Kerry Swendt, WSBA No. 49922
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
(206) 224-7619
michelle@michellepetersonlaw.com
kerry@michellepetersonlaw.com

PLAINTIFF'S COMPLAINT FOR DAMAGES- 7
Case No. 18-CV-00176-MJP