UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK MAYES, | CASE NO. C18-176 MJP |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| AMAZON.COM.DEDC LLC, | DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Defendant. | |

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 63), Plaintiff's Motion for Summary Judgment, and Defendant's Motion to Strike (Dkt. No. 80). Having reviewed the motions, the responses (Dkt. Nos. 69, 70, 76), the replies (77, 78, 82), and all related papers, the Court GRANTS Defendant's Motion for Summary Judgment and Motion to Strike and DENIES Plaintiff's Motion for Summary Judgment.

**Background**

For Plaintiff Mark Mayes, who is African-American, the problems began almost immediately after he started working as a full-time Fulfillment Associate for the Defendant,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

Amazon.com.dedc LLC ("Amazon"). (Dkt. No. 1 ¶ 6; Dkt. No. 64, Declaration of Jeff Heckel ("Heckel Decl."), Ex. D at 40.)

During his first week, Mr. Mayes approached an HR Administrative Assistant, whose shirt said "gangsta napper," thinking that the shirt said "gangsta nigger." (Dkt. No. 68, Declaration of Linda Walton ("Walton Decl."), Ex. Z at 138:20-139:13; Dkt. No. 65, Declaration of Keiko Napier ("Napier Decl.") ¶ 2 Ex. U.) This conversation took place in front of a message board that Mr. Mayes believed referred to the exclusively Caucasian managers in the fulfillment center as "owners." (Walton Decl., Ex. Z at 138:25, 199:20-25.) Amazon claims the referenced "owners" are any employee who acts in response to a comment posted on the board. (Heckel Decl. ¶ 11, Ex. C at 45-47.)

The following day, Mr. Mayes received his first write-up for making four errors, caught by Amazon's automated system that monitors errors and timing as employees scan products. (Heckel Decl., Ex. E at 53-54; Id. ¶ 8.) Other new employees also received write-ups in their first weeks. (Walton Decl., Ex. Z at 182:6-13, 204:19-205:6.) Between June 11 and June 24, Mr. Mayes received additional write-ups for not wearing his badge, (Id., Ex. Z at 205:20-25), taking a break at the wrong time (Heckel Decl. Ex. G), making quality errors, (Id. Ex. H), and for performing at only 50% of the speed expectation (Id.).

Mr. Mayes also asked his manager "to meet outside in the parking lot," which prompted a response from Senior Human Resources Assistant, Emily Larsen. (Walton Decl. Ex. Z at 143:18-22.) Mr. Mayes apologized during a meeting in Ms. Larsen's office but as he was leaving Ms. Larsen, while making a gun symbol with her hand, said, "We're gunning for you." (Id. at 146:22-24; 148:9-11.) Mr. Mayes took Ms. Larsen's comment as a threat and was so terrified he "went back to [his] station and[] almost passed out." (Id. at 148:7-24.)

Mr. Mayes called the Kent Police Department to report Ms. Larsen's comment and another comment from a manager allegedly telling Mr. Mayes he had "14 bullets" for him. (Walton Decl., Ex. BB.) Ms. Larsen explained that she meant she was rooting for Mr. Mayes and did not mean to threaten him. (Id. at 86.) The manager denied using the phrase "14 bullets" but said if he had used the term he was referring to 14 action items that would help Mr. Mayes succeed. (Id.) Mr. Mayes later acknowledged that the comment, "I got 14 bullets for you," was a reference to "the bullets of the topics that he went over." (Id., Ex. Z at 149:20 22; 200:16 18.) The Kent Police Department closed the case. (Id. at 227:4-228:23, Ex. BB at 86-87.)

In response to the disproportionate HR activity surrounding Mr. Mayes, a senior operations manager initiated an investigation that found Mr. Mayes received several unwarranted reprimands. (Declaration of Aaron Reynolds ("Reynolds Decl."), Ex. Y at 8.) The manager concluded, "I can completely understand how [Mr. Mayes] feels like we are 'badgering' him, especially with the frequency of documented feedback[] in this one week period." (Id.) After the meeting, several of Mr. Mayes's write-ups were exempted and he was reassigned to a new manager, although his performance remained in the bottom five percent of all fulfilment center employees. (Id. at 9, 10.)

In the following days, Mr. Mayes met separately with an operations manager and an HR business partner, making the statements: "I just can't do this anymore" and "I don't know how I can keep up." (Heckel Decl. Ex. P at 4.) Then, on July 7, 2017—five weeks after Mr. Mayes began working for Amazon—he told his manager he was unable to work because of a doctor-prescribed boot he was wearing to ease pain from an earlier surgery. (Id. Ex. O at 1.) Mr. Mayes was escorted to the onsite medical office where he was given paperwork for a worker's compensation claim. (Id.) He left after the meeting without completing the paperwork and

never returned to Amazon. (Id. ¶¶ 25–27, Ex. R at 151.) Mr. Mayes was notified of his "voluntary resignation due to job abandonment" on October 18, 2017. (Id., Ex. S.)

Mr. Mayes now brings claims for (1) discrimination on the basis of race in violation of Title VII of the 1964 Civil rights Act, 42 U.S.C. § 2000e et seq.; (2) creating a hostile work environment due to race or color in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq.; (3) retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000, and; (4) race discrimination and wrongful termination in violation of the Washington State Law Against Discrimination, RCW chapter 49.60. (Dkt. No. 19.) Both parties seek summary judgment on all claims. (Dkt. No. 63, 71.)

**Discussion**

**I.    Amazon's Motion to Strike**

As an initial matter, Defendant moves to strike one of Plaintiff's many surreplies (Dkt. No. 78), which contains 11 pages of substantive argument. (Dkt. No. 80 at 1-3.) As there can be no dispute that new arguments raised in a surreply are improper, see, e.g., Amazon.com LLC v. Lay, 758 F. Supp. 2d 1154, 1171 (W.D. Wash. 2010); Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007), the Court GRANTS the Motion to Strike and declines to consider these arguments in its assessment of the Parties' Motions for Summary Judgment.

**II.    Amazon's Motion for Summary Judgment**

**A.  Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FRCP 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The Ninth Circuit imposes a high standard for granting summary judgment in employment discrimination cases. The court has stated that "very little evidence" is required to survive summary judgment because "the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the factfinder, upon a full record." Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir. 1996) (internal quotation marks and citation omitted).

### B. Hostile Work Environment

To succeed on a Title VII hostile work environment claim based on race, an employee must demonstrate: (1) he was subjected to verbal or physical conduct of a racial nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. Reynaga v. Roseburg Forest Products, 847 F.3d 678, 687 (9th Cir. 2017). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 776 (1998). Additionally, "[t]he working environment must both subjectively and objectively be perceived as abusive." Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.1995).

Mr. Mayes alleges he was subjected to the following verbal or physical conduct of a racial nature:

1) He encountered a member of the HR department who wore a T shirt with the phrase "gangsta napper," which he believed said "gangsta nigger" (Dkt. No. 19 ¶ 7);
2) he was disciplined more severely than employees who were not African-American (Id. ¶ 9);
3) managers sarcastically told him to "hang in there" while standing in front of a board that referred to the exclusively Caucasian managers as "owners" (Id. ¶ 11);
4) a co-worker told Mr. Mayes that he smelled like watermelon in front of another manager, who is Caucasian (Id. ¶ 10); the second manager then told Mr. Mayes "I'm bright" while pointing at his skin (Id.);
5) Ms. Larsen told Mr. Mayes "I'm gunning for you" while making a gun gesture with her hand (Id. ¶ 12), and;
6) A manager threatened Mr. Mayes by telling him, "I got fourteen bullets for you" (Id. ¶ 14).

Based on these allegations and the evidence in the record, Mr. Mayes has not made a prima facie case for a hostile work environment claim. To begin, the evidence demonstrates that Mr. Mayes was mistaken about the offending shirt worn by a member of the HR department which said "gangsta napper." (Napier Decl. ¶ 2 Ex. U.) When presented with a picture of the shirt, Mr. Mayes asserted that even if the shirt did not include the offensive term, it was still a reference to an offensive racial slur (Walton Decl., Ex. Z at 170:6 23), which constitutes unwelcome conduct of a racial nature, Reynaga, 847 F.3d at 687. But ultimately, even viewing the evidence in the light most favorable to Plaintiff, the shirt constitutes an isolated incident that does not rise to a change in the terms and conditions of employment, Faragher, 524 U.S. at 776, where Mr. Mayes submits no probative evidence that any of the other alleged conduct was racial

in nature.  U.A. Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir.1995); see also FRCP 56.

Second, while there is some evidence that Mr. Mayes received an excessive number of write-ups, (Reynolds Decl., Ex. Y at 3), other non-African-American employees received write-ups in their first several weeks of employment (Walton Decl., Ex. Z at 204:19 205:6), Mr. Mayes told a manager that he was unable to keep up with his work (Heckel Decl. Ex. P at 82), and based on computer-generated reports, Mr. Mayes's performance was in the bottom five percent of all employees.  (Reynolds Decl. Ex. Y at 10.)

Other allegations are contradicted by Mr. Mayes himself.  He testified he thought "hang in there" was a racist remark "only because we were in front of the board," but later acknowledged the board did not state managers owned people, as he originally believed. (Walton Decl. Ex. Z at 235:18 21.)  He also admitted that the comment, "I got 14 bullets for you," was a reference to "the bullets of the topics [his manager] went over."  (Walton Decl., Ex. Z at 149:20 22; 200:16 18.)

Yet other allegations are supported by no evidence at all.  Mr. Mayes asserts that Ms. Larsen said "gunning for you" because she related to the way African Americans are depicted on television but submits no evidence that Ms. Larsen was doing anything other than using a common idiom in order to encourage him. (Walton Decl. Ex. Z at 156:21-25; Id. Ex. BB at 86; Dkt. No. 63 at 21.)  And there is no record of the 'watermelon' and 'bright' comments because Mr. Mayes did not complain about them to Amazon and did not mention the alleged comments until his supplemental submissions to the EEOC.  (Id. Ex. FF.)  The manager accused of making the comments has declared he was not present for any conversation where watermelon was referenced, never said "I'm bright" (Reynolds Decl. ¶ 11), and Mr. Mayes did not mention these

comments when asked repeatedly about instances of discrimination at Amazon. (See Walton Decl. Ex. Z at 226:21 227:3, 228:24 229:16.)

Because Mr. Mayes has not made out a prima facie case, his hostile work environment claim is dismissed.

### C. Employment Discrimination

Plaintiff asserts employment discrimination claims under Title VII, Section 1981, and WLAD on the basis of race, alleging he was subjected to disparate treatment because he is African-American. (Dkt. No. 19 ¶¶ 8-9, 17.) Absent direct evidence of discrimination, employment discrimination claims under Title VII, Section 1981, and WLAD typically are analyzed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010). The plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) he is a member of a protected class; (2) he was qualified for his position or performing satisfactory work; (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably, or other circumstances surrounding the adverse action give rise to an inference of discrimination. Id. If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. If the defendant succeeds, then the plaintiff must produce evidence that defendant's articulated reason is mere pretext for unlawful discrimination. Id.

Mr. Mayes has not demonstrated that he was doing satisfactory work, receiving multiple computer-generated write-ups (Heckel Decl., Exs. E at 53-54, H at 60-62, I at 64, K at 68), and performing in the bottom five percent of employees (Reynolds Decl. Ex. Y at 10). Nor has he introduced any comparators outside his protected class who were treated more favorably;

instead, there is evidence that non-African-American employees were also disciplined for their work performance.   (Id. at 204:19-205:6; Reynolds Decl. Ex. Y at 10).

Ultimately, although an employee's burden in opposing an employer's motion for summary judgment is minimal, Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1124 (9th Cir. 2000), Mr. Mayes has not met this burden with respect to his employment discrimination claim.

**D.  Retaliation**

To establish a prima facie case of retaliation under Title VII, Plaintiff must show that (1) he engaged in a protected activity, (2) suffered an adverse employment action, and (3) there was a causal link between his activity and the employment decision.  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).  "If a plaintiff has asserted a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision."  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive."  Id.

Viewing the evidence in the light most favorable to Mr. Mayes, a reasonable fact-finder could determine that he established a prima facie case; but ultimately he fails to substantiate his retaliation claim.  Mr. Mayes alleges that in response to his complaints about the "Gangsta Napper" shirt he received retaliatory write-ups that led one manager to acknowledge, "I can completely understand how he feels like we are 'badgering' him."  (Dkt. No. 19, ¶ 9; Reynolds Decl., Ex. Y at 8.)  Mr. Mayes's complaints to supervisors are protected activity and immediately preceded his write-ups, allowing the Court to infer a causal link between Mr. Mayes's protected activity and the alleged retaliatory actions.  Ray, 217 F.3d at 1241; Yartzoff v. Thomas, 809 F.2d

1371, 1376 (9th Cir. 1987); Santillan v. USA Waste of California, Inc., 853 F.3d 1035, 1048 (9th Cir. 2017) (citations omitted).

In response, Amazon asserts that Mr. Mayes received write-ups only for legitimate performance infractions. (Heckel Decl. Ex. H.) And after Mr. Mayes complained to HR, his manager exempted all but one write-up, the opposite of retaliation. (Dkt. No. 63 at 23; see also Heckel Decl. Ex. Y at 9.) Submitting no evidence in response, Mr. Mayes fails to carry the "ultimate burden" of demonstrating that Amazon's proffered legitimate nondiscriminatory reasons for the write-ups are merely pretext. Ray v. Henderson, 217 F.3d at 1240.

### E. Wrongful Termination

To establish wrongful discharge in violation of public policy under Washington law, a plaintiff must "show that his discharge may have been motivated by reasons that contravene a clear mandate of public policy" and "that the public-policy-linked conduct was a 'significant factor' in the decision to discharge the worker." Martin v. Gonzaga Univ., 425 P.3d 837, 844 (Wash. 2018) (internal quotation marks omitted). Plaintiff has not satisfied either prong of a prima facie wrongful discharge claim where the evidence only demonstrates that Mr. Mayes was let go three months after he stopped working without filing the necessary paperwork for leave. (Dkt. No. 76 at 5; Dkt. No. 64, Ex. S.)

### F. Plaintiff's Motion for Summary Judgment

Although styled as a cross-motion for summary judgment, Mr. Mayes's Motion deals exclusively with discovery. (Dkt. No. 71.) Mr. Mayes seeks video footage of specific instances of discriminatory conduct and seeks sanctions against Amazon for failing to preserve this evidence. (Dkt. No. 71 at 1-3.) He has previously moved for this video footage, which Amazon

has consistently asserted does not exist, and the Court has already ruled on these issues. (Dkt. No. 50 at 2-6; Dkt. No. 59.) Mr. Mayes's Motion for Summary Judgment is therefore DENIED.

## Conclusion

Having concluded that Mr. Mayes lacks the evidence to support his claims, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

The clerk is ordered to provide copies of this order to all counsel.

Dated June 4, 2019.

Marsha J. Pechman
United States District Judge